United States District Court
Southern District of Texas
**ENTERED**
October 17, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUDITH DEEDS and DAVID DEEDS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civ. A. H-15-2208 |
| | § | |
| WHIRLPOOL CORPORATION and | § | |
| SEARS, ROEBUCK AND CO., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced products liability case is Defendants Whirlpool Corporation ("Whirlpool") and Sears, Roebuck and Co.'s ("Sears'") second motion for summary judgment (instrument #22)[1] on Plaintiffs' pending claims for breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose (instrument #22). This suit arises from Judith Deeds' serious personal injury[2] when she slipped and fell in her home on October 21, 2012 on water that purportedly leaked from an allegedly defective, cracked evaporator pan in a refrigerator that was designed, produced, manufactured, and packaged by Whirlpool, a "manufacturer" under

---

[1] The docket sheet erroneously records this instrument as Defendants' first motion for summary judgment. Defendants' first motion for summary judgment was instrument #9.

[2] According to the first amended complaint (#25), Judith Deeds' injuries required surgical implantation of a metal rod into the back of her right arm and shoulder.

-1-

Tex. Civ. Prac. & Rem. Code § 82.001(4), and sold to Plaintiffs on or about June 18, 2012 by Sears,, a "seller" under Tex. Civ. Prac. & Rem. Code § 82.001(3),

On June 20, 2016, just four months before the docket call and trial dates for this case and despite a discovery deadline of June 1, 2016, United States Magistrate Judge Frances Stacy granted leave to Plaintiffs to add the breach of express and implied warranty claims.   In its recent opinion and order, the Court granted Defendants' first motion for summary judgment (#9), which was filed before Plaintiffs moved for leave to amend and which dismissed as time-barred all of Plaintiffs' claims in their Original Petition (#9-1, Ex. A) for strict liability product liability, negligence, the related evidentiary rule of *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior*.   Thus at this time only the breach of warranty claims asserted in the amended complaint remain pending.

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   A dispute of material

fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may

not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

### Applicable Law

A breach of warranty claim requires a showing that a warranty was broken. *Mott v. Red's Safe and Lock Services, Inc.*, 249 S.W. 3d 90, 98 (Tex. App.--Houston [1st Dist.] 2007), *citing* Tex. Bus. & Com. Code Ann, § 2.314 cmt. 13 (Vernon 1994). To prevail in a breach of warranty claim in a products liability suit, a plaintiff must establish that a defect in the product proximately caused the plaintiff to suffer an injury. *Helen of Troy, L.P. v. Zotos Corp.*, 511 F. Supp. 2d 703, 724 (W.D. Tex. 2006). *citing Hyundai Motor Co. v. Rodriguez*, 995 S.W. 2d 661, 667 (Tex. 1999). To show that the defect proximately caused the plaintiff's alleged injuries, the plaintiff must demonstrate "'but for' causation and forseeability.'" *Id., citing id.* ("While the concepts of defect are functionally indistinguishable for strict liability and breach of implied warranty, for strict liability a product defect must be shown to have been only a producing cause[3]-that is, a 'but for'

_____

[3] Texas courts define "producing cause" as one that is "a substantial factor in bringing about an injury, and without which the injury would not have occurred." *Ford Motor Co. v. Ledesma*,

cause-of injury, while liability for breach of warranty requires a showing of proximate cause--that is, 'but for' causation and foreseeability.").

In a products liability case, "the word 'defect' means a condition of the product that renders it unreasonably dangerous." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W. 2d 442, 444 (Tex. 1908). A product may be unreasonably dangerous because of defects in marketing/failure to warn, in design, or in manufacturing. *American Tobacco Co. v. Grinnell*, 951 S.W. 2d 420, 426 (Tex. 1997).

"Under Texas law, a plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *American Tobacco Co. v. Grinnell*, 951 S.W. 2d 420, 434 (Tex. 1997). To prevail on a manufacturing defect claim, the plaintiff must demonstrate that the product was defective when it left the hands of the manufacturer and that the defect was the producing cause of the plaintiff's injuries. *Dewayne Rogers Logging, Inc. v. Propac Industries, Ltd.*.

---

242 S.W. 3d 32, 46 (Tex. 2007). The essential elements of producing cause are that "(1) the cause must be a substantial cause of the event in issue and (2) must be a but-for cause, namely one without which the event would not have occurred." *Id.* Statutorily required by Tex. Civ. Prac. & Rem. Code § 82.005(a)(2), "[a] producing cause is an 'efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any.'" *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 238 (5th Cir. 2003), *quoting G.M.C. v. harper*, 61 S.W. 3d 118, 130 (Tex. App.--Eastland 2001).

299 S.W. 3d 374, 383 (Tex. App.--Tyler 2009), *citing Ford Motor Co.*
*v. Ridgway*, 135 S.W. 3d 598, 600 (Tex. 2004), and *Torrington Co. v.*
*Stutzman*, 46 S.W. 3d 829, 844 (Tex. 2000)("To recover in strict
liability for a manufacturing defect, the plaintiffs had to show
that the bearing was defective when Textron sold it, and that the
defect was the producing cause of plaintiffs' injuries.").  Under
Texas law, a manufacturer's duty to warn about risks posed by a
product exists at the time it is manufactured and sold, but the
manufacturer  has no duty to warn about a product after that point.
 *Bryant v. Giacomini, S.p.A.*, 491 F. Supp. 2d 495, 503 (N.D. Tex.
20015), *citing McLennan v. Eurocopter Corp, Inc.,* 245 F.3d 403, 430
(5th Cir. 2001); *Syrie v. Knoll Intern.*, 748 F.2d 304, 311 (5th Cir.
1984).  The plaintiff bears the burden of proving that the goods
were defective at the time they left the manufacturer's or seller's
possession.  *Plas-Tex, Inc.*, 772 S.W. 2d at 445.

    "A design defect renders a product unreasonably dangerous as
designed, taking into consideration the utility of the product and
the risk involved in its use." *Dewayne Rogers*, 299 S.W. 3d at 383,
*quoting Gen. Motors Corp. v. Sanchez*, 997 S.W. 2d 584, 588 (Tex.
1999).  A design defect requires the plaintiff to allege that "(1)
there was a safer alternative; (2) the safer alternative would have
prevented or significantly reduced the risk of injury without
substantially impairing the product's utility; and (3) the safer
alternative was both technologically and economically feasible when

the product left the control of the manufacturer." *Smith v. Aqua-Flo, Inc.*, 23 S.W. 3d 473, 477 (Tex. App.--Houston [1ˢᵗ Dist.] 2000, pet. denied).   Tex. Civ. Prac. & Rem. Code Ann. § 82.005 and Section 402A of the *Restatement (Second) of Torts* (1965)[4] govern

---

[4] Section 82.005(a) and (b) state,

(a) In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:

    (1) there was a safer alternative design; and

    (2) the defect was a producing cause of the personal injury, property damage or death for which the claimant seeks recovery.

(b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:

    (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

    (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonable achievable scientific knowledge.

Section 402A of the *Restatement* provides,

(1) one who sells any product in a defective condition unreasonably dangerous to the ultimate user or consumer or his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or

products liability claims for design defects in Texas. *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003).

A marketing defect exists "when a defendant knows or should have known of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use." *Id., citing USX Corp v. Salina*, 818 S.W. 2d 473, 482 (Tex. App.--San Antonio 1991, writ denied).  The plaintiff must prove "(1) a risk of harm exists that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury." *Id.* at 384, *citing USX Corp.*, 818 S.W. 2d at 482-83.  *See also* Tex. Civ. Prac. & Rem. Code § 2.313.  The supplier of the product is not liable for a failure to warn of dangers that were unforeseeable at the time the product was marketed.  *Id., citing id.* at 483.  The existence of a duty to warn of dangers or instruct regarding proper use of a product is a question of law.  *American*

---

      consumer without substantial change in the
      condition in which it is sold.

*Tobacco Co. v. Grinnell*, 951 S.W. 2d 420, 426 (Tex. 1997).   An exception to this duty has been recognized when the risks associated with the product are matters "within the ordinary knowledge common to the community."  *Id.* at 427-32*, citing Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W. 2d 385, 388 (Tex. 1991)(no legal duty exists to warn of the health risks of alcohol consumption because such risks are common knowledge), and Comments I and j to *Restatement* section 402A.  *Bryant v. Giacomini, S.p.A.*, 491 F. Supp. 2d 495, 503 (N.D. Tex. 20015), *citing McLennan v. Eurocopter Corp, Inc.,* 245 F.3d 403, 430 (5th Cir. 2001).[5]

    To prevail on a claim of breach of express warranty a plaintiff must prove "'1) an affirmation or promise made by the seller to the buyer [plaintiff]; 2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5) that the failure to comply was the proximate cause of the financial injury to the buyer.'"  *Scott v. Dorel Juvenile Group, Inc*., 456 Fed. Appx. 450, 456 (5th

---

    [5] There are two exceptions to this rule, neither of which applies here:  where the manufacturer again gains some substantial control over the product and where a manufacturer assumes a post-sale duty and the fails to use reasonable means to discharge that duty.  *Bryant*, 391 F. Supp. 2d at 503-04, *citing Syrie v. Knoll Int'l*, 748 F.2d 304, 311 (5th Cir. 1984), and *Dion v. Ford Motor Co*., 804 S.W. 2d 302, 319 (Tex. App.--Eastland 1991, writ denied).

Cir. Jan. 4, 2012), *quoting Lindenmann v. Eli Lilly & Co.*, 816 F.2d 199, 202 (5th Cir. 1987).  Tex. Bus. & Com. Code § 2.313.

In implied warranty cases, contact between the seller and the plaintiff buyer is not required.  *Scott*, 456 Fed. Appx. at 456, *citing Garcia v. Tex. Instruments, Inc.*, 610 S.W. 2d 456. 465 (Tex. 1980).

To prevail on a claim for breach of implied warranty of merchantability, the plaintiff must establish four elements:  "'1) the defendant sold or leased a product to the plaintiff; 2) the product was unmerchantable; 3) the plaintiff notified the defendant of the breach; and 4) the plaintiff suffered injury.'"  *Helen of Troy*, 511 F. Supp. 2d at 724-25, *quoting Polaris Indus., Inc. v. McDonald*, 119 S.W. 3d 331, 336 (Tex. App.--Tyler 2003, no pet.), citing Tex. Bus. & Com.  Code Ann. § 2.314 (nonexhaustive list of minimum requirements for a product to be merchantable), § 2.314 cmt. 13, § 2.607(c)(1), § 2.714, and § 2.715 (Vernon 1994); *Plas-Tex., Inc. v. U.S. Steel Corp.*, 772 S.W. 2d 442, 444 (Tex. 1989)("Proof of a defect is required in an action for breach of implied warranty of merchantability under section 2.314(b)(3)).  "A product is unmerchantable if it cannot pass without objection in the trade, i.e., it must be of a quality comparable to other products that are sold in that line of trade under the contract description. *Polaris,* 119 S.W. 3d at 336, *citing* Tex. Bus. & Com. Code Ann. § 2.314(b)(1)(Vernon 1994), and *Harris Packaging Corp. v.*

-10-

*Baker Concrete Constr. Co.*, 982 S.W. 2d 62, 65-66 (Tex. App.--
Houston [1st dist.] 1998, pet denied).  It is also considered
unmerchantable if it is unfit for ordinary purposes, i.e., it has
a defect or lacks something necessary for adequacy because it fails
to accomplish the purposes for which it was manufactured or it was
constructed in a way that makes it unreasonably dangerous.  *Id.*,
*citing Plas-Tex*, 772 S.W. 2d at 444, and *Hyundai Motor Co. v.
Rodriguez*, 995 S.W. 2d 661, 665 (Tex. 1999).  "In the context of an
implied warranty of merchantability case, the word 'defect' means
a condition of the goods that renders them unfit for the ordinary
purpose for which they are used because of a lack of something
necessary for adequacy." *Para-Chem Southern, Inc. v. Sandstone
Products, Inc.*, No. 01-06-01073-CV, 2009 WL 276507, at *14 (Tex.
App.--Houston [1st Dist.] Feb, 5, 2009), *citing Plas-Tex*, 772 S.W.
2d at 444.  It may also be unmerchantable if it fails to conform
to the promises or affirmations of fact on the product's container
or label. *Id.*, *citing* Tex. Bus. & Co. Code Ann. § 2.314(b)(6).  A
plaintiff can show an implied warranty of merchantability was
broken by showing the goods were not "fit for the ordinary purposes
for which such goods are used." *Mott* at Tex. Bus. & Com. Code Ann.
§ 2.314(b)(3). "'[F]or a defect to cause redressable damages in a
breach of the implied warranty of merchantability action, it must
cause the product not to function adequately in the performance of
its ordinary function for the plaintiff.'" *Helen of Troy*, 511 F.

-11-

Supp. 2d at 725, *quoting Everett v. TK-Taito, LLC*, 178 S.W. 3d 844, 854 (Tex. App.--Fort Worth 2005, no pet.).

"'Evidence of proper use of the goods together with a malfunction may be sufficient evidence of a defect.'" *Id., quoting Plas-Tex*, 772 S.W. 2d at 444-45; *in accord Parsons v. Fort Motor Co.*, 85 S.W. 3d 323, 329-30 (Tex. App.--Austin 2002, pet. denied). Such circumstantial evidence can be used to establish an issue of material fact as to a product defect; thus expert testimony is not required to establish an issue of material fact as to a product defect. *Mott v. Red's Safe and Lock Services, Inc.*, 249 S.W. 3d 90, 96 (Tex. App.--Houston [1st Dist.] 2007), *citing Ford Motor Co. v. Ridgway*, 135 S.W. 3d 598, 601 (2004).

Once plaintiff shows a product is unmerchantable, he must show the defect caused him to suffer injury. *Id., citing Rodriguez*, 995 S.W. 2d at 667-68. Expert evidence will be required to establish proximate cause if the issue involves matters beyond "the general experience and common understanding of laypersons." *Driskill v. Ford Motor Co.*, 269 S.W. 3d 199, 204-05 (Tex. App.--Texarkana 2008, no pet.)("There is no expert testimony bridging the analytical gap between the origin of the fire in the left rear area of an engine compartment and the conclusion that the [speed control deactivation switch] in the areas was the cause-in-fact of the fire," but only "a strong suspicion"; requiring expert evidence), *citing Mack Trucks, Inc. v. Tamez*, 206 S.W. 3d 572. 583 (Tex. 2006).

-12-

Unlike a strict products liability case, in which the word "defect" means a condition of the product that makes it unreasonably dangerous, in an implied warranty of merchantability case "defect" means "a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." *Plas-Tex, Inc.*, 772 S.W. 2d at 444; *Mott*, 249 S.W. 3d at 98 (Whether a product is unfit for its intended purpose is not an element of products liability). A product can be unreasonably dangerous while at the same time be fit for its intended purposes. *Mott*, 249 S.W. 3d at 98, *citing Everett*, 178 S.W. 3d at 854.

In a claim for breach of implied warranty of merchantability, the plaintiff can recover actual damages, including the difference between the value of the goods accepted and the value of the goods if they had been as warranted, and incidental and consequential damages such as foreseeable lost profits, personal injury and property damage caused by the breach. *Polaris*, 119 S.W. 3d at 337, *citing* Tex. Bus. & Com. Code Ann. § 2.714(b); *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W. 2d 320, 326-27 (Tex. 1978); *Garcia v. Texas Instruments*, 610 S.W. 2d 456, 462 (Tex. 1980)..

To prevail on a breach of implied warranty of fitness for a particular purpose, the plaintiff must prove that (1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting, and (2) the buyer was relying

on the seller's skill or judgment to select or furnish suitable goods. *Para-Chem*, 2009 WL 276507 at *15, *citing* Tex. Bus. & Com. Code Ann. § 2.315; *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W. 2d 118, 121 (Tex. App.--El Paso 1996, no writ). An implied warranty of fitness for a particular purpose "does not arise unless the particular purpose differs from the usual and ordinary use of the goods. In other words, the particular purpose must be some unusual, out of the ordinary purpose peculiar to the needs of an individual buyer." *Coghlan v. Aquasport Marine Corp.*, 75 F. Supp. 2d 769, 774 (S.D. Tex. Oct. 8, 1999), *citing* Tex. Bus. & Com. Code Ann. § 2.315, Comment (2)("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer that is peculiar to the nature of his business."); *Sipes v. General Motors Corp.*, 946 S.W. 2d 143, 158-59 (Tex. App.-Texarkana 1997, writ denied)(no warranty of fitness for particular purpose where plaintiffs acquired airbags "for the general purpose for which they were designed."); *ASAI*, 932 S.W. 2d at 122 (no implied warranty of fitness for a particular purpose because "the record reveals no evidence that Appellant's particular purpose for the vacuum was somehow different than its ordinary use."). A warranty for the ordinary use of a product is covered under the warranty of merchantability in section 2.314." *Id.* at 122, *citing Crosbyton Seed Co. v. Mechura Farms*, 875 S.W. 2d 353, 365 (Tex. App.--Corpus Christi 1994, no writ), and Tex. Bus. & Com.

Code Ann. § 2.315, comment 2.  *See also Coghlan*, 73 F. Supp. 2d at ("Obviously, a seller may nevertheless be liable if a product proves unsuitable for its ordinary use, but that liability hinges on a different implied warranty, the warranty of merchantability."), *citing* Tex. Bus, & Com. Code Ann. § 2.314, and *Crosbyton Seed*, 875 S.W. 2d at 365.

Whether a particular issue requires the presentation of expert testimony is an issue of law. *Mack Trucks, Inc. v. Tamez*, 206 S.W. 3d 572, 583 (Tex. 2006).  Expert evidence is required when an issue involves matters beyond jurors' common understanding. *Alexander v. Turtur & Assocs.*, 146 S.W. 3d 113, 119-20 (Tex. 2004).  Whether expert testimony is required depends on whether the theory argued by the plaintiff involves issues beyond the general experience and common understanding of laypersons. *Driskill v. Ford Motor Co.*, 269 S.W. 3d 199, 204 (Tex. App.--Texarkana 2008, no pet.).  "Proof other than expert testimony will support a jury finding only when the jurors' common understanding and experience will allow them to make that finding with reasonable probability." *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W. 3d 338, 348 (Tex. 2015), *citing Mack Trucks, Inc. v. Tamez*, 296 S.W. 3d 572, 583 (Tex. 2006).  The Texas Supreme Court has consistently required expert testimony and objective proof to support a jury finding that a product defect caused the plaintiff's injury. *Id., citing id.* at 582-83, and *Nissan Motor Co. v. Armstrong*, 145 S.W. 3d 131, 137-38

(Tex. 2004)(whether product defect caused a motor vehicle to accelerate unintentionally).

Amended and in effect as of December 1, 2010, Federal Rule of Civil Procedure 26 distinguishes between two types of experts, (1) "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involved in giving expert evidence"[6] and (2) non-retained experts, regarding disclosure requirements.   Rule 26(a)(2)(A) requires generally that a party "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702,[7] 703,[8] or 705."   Under Rule 26(a)(2) the retained or specially employed experts must submit a written report containing

---

[6] Fed. R. Civ. P. 26(a)(2).

[7] Rule 702 states,

A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

[8] Rule 703 states in part, "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

(I) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

Under Rule 26(a)(2)(C), added in the 2010 amendment of Rule 26, non-retained witnesses do not have to submit a written report, [and] "may both testify as fact witness[es] and also provide expert testimony."  Advisory Committee Notes (2010 Amendments).  Non-retained witnesses must disclose

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
(ii) a summary of the facts and opinions to which the witness is expected to testify.

See generally Gtg Holdings, Inc. v. Amvensys Capital Group, LLC, 2015 WL 11120884 (N.D. Tex. Apr. 8, 2015).  These requirements for non-retained witnesses were intended to be "considerably less extensive" that those for retained experts and courts "must take care against requiring undue detail."  Advisory Committee Notes to 2010 Amendments.

Rule 26 does not define "retained or specially employed to provide expert testimony" and courts have tried to distinguish them from non-retained experts.  For example the district court in Davis

-17-

*v. GEO Group*, Civ. A. No. 10-cv-02229-WJM-KMT, 2012 WL 882405, at
*2 (D. Colo. March 15, 2012)(citations omitted by this Court)(in
accord with the 2010 Advisory Committee Notes addressing
application of Rule 26(a)(2)(C)), wrote,

> [I]t is the substance of the expert's testimony, not the
> status of the expert, which will dictate whether a Rule
> 26(a)(2)(B) report will be required.  When a witness's
> testimony is limited to "his observations, diagnosis, and
> treatment of a patient, the physician is testifying about
> what he saw and did and why he did it, even though the
> physician's treatment and his testimony about that
> treatment are based on his specialized knowledge and
> training."   Under   these   circumstances,   no   Rule
> 26(a)(2)(B) report is necessary. However, when a witness
> "opines as to causation, prognosis, or future disability,
> the physician is going beyond what he saw and did and why
> he did it . . . and [is] giving an opinion formed because
> there is a lawsuit.  A similar conclusion may be reached
> when a witness is asked to review the records of another
> healthcare provider in order to formulate his or her own
> opinion  on  the  appropriateness  of  care.   In  both
> instances,   the   witness   is   considered   "retained   or
> employed" under Rule 26(a)(B) and must file a written
> report accordingly.

*In accord, Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 174 (D.
Nev. 1997).  Nevertheless with the amendment of Rule 26 in 2010,
adding 26(a)(2)(C), a treating physician must file a summary report
or a complete expert report, depending on the breadth of his
testimony; the Advisory Committee Notes indicate that physicians
and other health care professionals need to submit summary
disclosures.  *Brunswick v. Menard*, No. 2:11 CV 247, 2013 WL
5291965, at *4 (N.D. Ind. Sept. 19, 2013).

The First Circuit has defined a retained or specialty expert
as "an expert who without prior knowledge of the facts giving rise

to litigation, is recruited to provide expert opinion testimony,"
while a non-retained expert is one who is "actually involved in the
events giving rise to the litigation" and whose knowledge arises
from his or her involvement in those events giving rise to the
litigation and arrives at his causation opinion during that
involvement . *Downey v. Bob's Disc Furniture Holdings*, 633 F.3d 1,
6-7 (1st Cir. 2011).  In contrast, "the expert [who] comes to the
case as a stranger and draws the opinion from facts supplied by
others in preparation for trial [can reasonably] be viewed as
retained or specially employed for that purpose, within the purview
of Rule 26(a)(2)(B)."  *Id.* at 7.

In *Burreson v. BASF Corp.*, No. 2:13-cv-0066 TLN AC, 2014 WL
4195588, at *2-8 (E.D. Calif. Aug. 22, 2014) the district court
rejected the view that application of Rule 26(a)(2)(B) turns on
whether the witness is paid and concluded that "[t]he dispositive
question for present purposes is whether the witness's opinion was
developed either for purposes of litigation or as part of the
witness's duties as the party's employee"), *citing Ordon v. Karpie*,
223 F.R.D. 33, 36 (D. Conn. 2004).  *See also Meyers v. National
R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 735 (7th Cir.
2010)("Dr. Rosseau and Dr. Tonino prepared letters with options as
to the causation of Meyers's injuries at the request of Meyers's
attorney, specifically for the purpose of litigation" so they are
required to provide a proper expert report).

"Absent a stipulation or a court order," these disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D)(1).

"If a party fails to provide . . . information . . . as required by Rule 26(a) or 26(e)[supplement disclosures], the party is not permitted to use that information or witness . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Primrose Operating Co. v. Nat'l Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). In deciding whether such a failure is harmless, the court considers four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Primrose*, 382 F.3d at 564.

This Court in its discretion may exclude the testimony of experts who have not been properly designated. *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971)(to achieve justice under Federal Rule of Civil Procedure 16 the court should exercise its discretion over pretrial procedures "with intelligent flexibility, taking into full consideration the exigencies of each situation. The trial judge must be permitted wide latitude in guiding a case through its preparatory stages. His decision as to the extent that pretrial activity should prevent the introduction of otherwise competent and relevant testimony at trial must not be disturbed

unless it is demonstrated that he has clearly abused the broad discretion vested in him by Rule 16."); *Timberlake v. Synthes Spine, Inc.*, Civ. A. No. V-08-4, 2010 WL 582574 (S.D. Tex. Feb. 10, 2010)(finding Plaintiffs satisfied the four-part test and allowing Plaintiff to designate an additional expert witness after the deadline for designating experts).

### Defendants' Motion for Summary Judgment (#22)

Because Plaintiffs have pleaded in this personal injury suit claims for breach of warranty claims along with strict liability, negligence, respondeat superior and res ipsa loquitur, under Texas Civ. Prac. & Rem. Code § 82.001(2), the instant suit is a products liability action.  Section 82.001(2) of the Texas Civil Practice & Remedies Code provides, "'Products liability action' means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, **breach of express or implied warranty**, or any other theory or combination of theories. [emphasis added by this Court]"  Texas Civil Practice & Remedies Code § 16.012 defines a product liability action as "any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence,

-21-

misrepresentation, **breach of express or implied warranty**, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including a suit for . . . personal injury. [emphasis added by this Court]"

Because Plaintiffs are seeking damages from the alleged designer/producer/manufacturer, Whirlpool, and from Sears as the seller of the refrigerator at issue as a defective product, Plaintiffs' breach of warranty claims fall within the definition of "products liability action" as set forth in Tex. Civ. Prac. & Rem. Code § 82.001(2). Plaintiffs have further alleged that a defective evaporator pan in the refrigerator caused injury to Judith Deeds. While the Court has previously dismissed Plaintiffs' claims for strict liability, negligence, *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior* as time-barred, Plaintiffs' claims for breach of warranty and of implied warranty of merchantability and of fitness for a particular purpose, governed by a four-year statute of limitations, remain pending. Nevertheless, even for those breach of warranty claims Plaintiffs must prove the refrigerator was defective.

Defendants' motion for summary judgment maintains that Plaintiffs must, but have failed to, designate an expert to opine on Defendants' alleged liability under *Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W. 3d 131, 137 (Tex. 2004)(a products liability

-22-

action arising from the unintended acceleration of an automobile allegedly due to a defective throttle cable requires competent expert testimony and objective proof that a defect caused the acceleration in a suit where plaintiff allege design, manufacturing and marketing defects because there were many potential causes). Therefore, Defendants argue, Plaintiffs' failure to designate even one liability expert means they cannot meet their *prima facie* burden of establishing liability on any of their claims, which must therefore be dismissed.  *See also Cooper Tire & Rubber Co. v. Mendez*, 204 S.W. 3d 797 (Tex. 2006)(Generally a product failure standing alone does not prove a product defect); *DeGrate v. Exec. Imprints, Inc.*, 261 S.W. 3d 402, 410-11 (Tex. App.--Tyler 2008, no pet.)(design defect claim requires expert testimony and objective proof that a defect caused the injury; conclusory statements by an expert are not competent summary judgment evidence); *Georgia-Pacific Corp. v. Stephens*, 239 S.W. 3d 304, 321 (Tex. App.--Houston [1st Dist.] 2007, pet. denied)(expert testimony required to show that painter frequently and regularly worked in close proximity to manufacturer of asbestos-containing joint compound to be sufficiently exposed to asbestos to increase his risk of developing mesothelioma); *Ethicon Endo-Surgery, Inc. v. Meyer*, 249 S.W. 3d 513, 516-17 (Tex. App.--Fort Worth 2007, no pet.).

Defendants further point out that the deadline in the docket control schedule for Plaintiffs' designation of expert witnesses

was April 1, 2016.

### Plaintiffs' Response (#26)

Plaintiffs insist that the Court should deny Defendants' motion for two reasons: (1) lay testimony is sufficient to prove causation here; and (2) applying the doctrine of *res ipsa loquitur* here, Plaintiffs can show causation by circumstantial evidence without the need for expert testimony. Under Texas law, lay testimony is adequate to prove causation in cases which general experience and common sense enable a layman to decide, with reasonable probability, the causal relationship between the event and the condition. *Kallassy v. Cirrus Design Corp.*, No. Civ. A. 3:04-CV-0727N, 2006 WL 1489248, at *5 (N.D. Tex. May 30, 2006).

They also state that they filed a designation of expert witness list (#7), which names, as non-retained experts[9] and fact witnesses on the defective pan, the Installation and Service Providers who are agents and/or employees of Defendants, with their addresses, specifically Edgar Roldan d/b/a Roldan Trucking Company and Pham, Technician I.D. #0687509 of A&E Services. It also names

---

[9] A non-retained expert may testify only about opinions formed during the course of his participation in the relevant events of the case and only to opinions which were properly disclosed. *Guarantee Trust Life Ins. Cp. v. Am. Medical and Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013). The difference between retained and non-retained experts is that non-retained experts gain their information through percipient observations, while retained experts gain their information in any other manner. *U.S. v. Sierra Pac. Indus.*, No. CIV S-09-2445, 2011 WL 2119078, at *4 (E.D. Cal. May 26, 2011).

Plaintiff David Deeds as a non-retained expert in industrial plastics from his work in the manufacturing industry.

## Court's Determination

The Court finds that Defendants' second motion for summary judgment is premature because Plaintiffs have failed even to state a claim for breach of any warranties upon which relief can be granted, one that would satisfy Rule 12(b)(6), no less one for which there are sufficient facts for the Court to determine whether evidence from a retained or specially employed expert is needed, whether the identified non-retained experts' testimony would be sufficient, or whether lay testimony would suffice. Indeed, given the facts (1) that Plaintiffs moved for leave to amend on May 19, 2016 to add claims even though the deadline for amending was January 15, 2016 and the deadline for discovery was June 1, 2016, (2) that Defendants had previously moved for summary judgment on all their original petition's claims based on limitations, (3) that Plaintiffs failed to move for an amended docket control schedule when they moved for leave to amend,[10] and (4) that the proposed

---

[10] Federal Rule of Civil Procedure 11(b)(emphasis added by this Court) provides that in presenting the proposed amended complaint to the court, Plaintiffs' counsel was certifying "to the best of [his] knowledge, information and belief, *performed after an inquiry reasonable under the circumstances*":

(1) it is not being presented for any improper purpose, such as to harass, *cause unnecessary delay*, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions

-25-

second amended complaint attached to Plaintiffs' motion for leave to amend (#17) added warranty claims that are factually deficient, but which have longer, four-year statutes of limitations, this Court finds that the motion for leave to amend should not have been granted.   Since it was, the Court addresses the resulting situation.

Even though a motion to dismiss has not been filed,[11] the Court finds that the amended complaint's breach of warranty claims do not satisfy the basic requirements of Rule 12(b)(6).   To breach a warranty in a products liability suit there must be a defect in the product that renders it unreasonably dangerous.   Comments h, j, and I of the *Restatement (Second) of Torts* § 402A.   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

---

are ***warranted by existing law***, or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law:

(3) the ***factual contentions have evidentiary support*** or, if specifically so identified, likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

[11] The Court has the right to assert a motion to dismiss *sua sponte* as long as it provides the parties with notice of its intention and an opportunity to respond. *Baney v. Mukasey*, 2008 WL 706917, at *4 (N.D. Tex. Mar. 14, 2008), *citing Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991); and 5A Wright & Miller, *Federal Practice & Procedure* § 1357, at 301 (1990). Nevertheless, in the interests of fairness, it chooses not to do so here.

detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). *Twombly* requires a complaint to "allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to

"'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs have failed to allege what the specific defect(s) is (were) and whether the defect in the refrigerator or evaporator pan was a manufacturing defect (deviation from plans rendering it unreasonably dangerous), a design defect (with a safer alternative design with a reasonable probability of preventing or reducing the risk of personal injury or property damage without substantially impairing the product's utility and was economically and technologically feasible at the time the product left the control of the manufacturer or seller), and/or a marketing defect (with a failure to warn or instruct), no less provide some supporting facts for their claim. *See, e.g., Barnes v. General Motors Corp.*, 653 S.W. 2d 85 (Tex. App.--San Antonio 1983)(holding in a products liability action against the manufacturer of a refrigerator that the refrigerator was not defectively designed and the manufacturing defect of a leak in the improper sealing of the outer shell of the refrigerator did not render it "defective," i.e., unreasonably dangerous, taking into consideration the utility of the product and the risk involved, that there no competent evidence showing that the refrigerator left the hands of the manufacturer in such a

defective condition as to make it unreasonably dangerous, and that the jury's finding that the owner's negligence in carrying the burning refrigerator from the house was the sole proximate cause of his back injury was not against the preponderance of the evidence).

Plaintiffs' bare-bones, conclusory amended complaint (#25) fails to state a claim for breach of any warranty. First, their alleged breach of express warranty claim (¶¶ 13-14) provides only the boilerplate elements, no factual details, and even fails to identify the warranty:

> 13. On June 18, 2012, Defendants sold the subject refrigerator to Plaintiffs. Defendant[s] made a representation to Plaintiffs about the title, quality, or characteristics of the subject refrigerator in the following ways:
>
>> (a) By affirmation of fact;
>> (b) By description; and
>> (c) By display of sample or model.
>
> 14. Subsequently, the Defendants' representations became part of the basis of the bargain. The subject refrigerator did not comply with the representation, as the defective evaporator pan directly caused the slip and fall experienced by Plaintiff JUDITH DEEDS. The plaintiff suffered injuries, which resulted in economic and actual damages. Tex. Bus. & Org. Code §§ 2.313, 2.607, 2.715.
>
> As such, the subject refrigerator's defective evaporator pan effectively breached the Defendants' express warranty.

The complaint fails to identify a single express warranty about the "title, quality or characteristics" of the subject refrigerator" by "affirmation of fact" or by "description" or by "display of sample or model," the central element of such a claim.

For their claim of breach of implied warranty of merchantability (¶¶ 15-17) they pleaded,

> 15. Defendants impliedly warranted that the subject WHIRLPOOL refrigerator would operate in accordance with its ordinary purpose.

> 16. The facts indicate that Defendants are merchants who sold goods to plaintiffs. The goods were merchantable. Upon Plaintiff JUDITH DEEDS' slip, Plaintiffs notified Defendants of the breach. As a result, Plaintiffs suffered economic and actual damages.

> 17. Evidence is sufficient to show that defective evaporator pan in subject refrigerator establishes a breach of implied warranty. The subject refrigerator failed substantially to operate in accordance with its ordinary purpose. Tex. Bus. & Com. Code § 2.314; *Hyundai Motor Co. v. Rodriguez*, 995 S.W. 2d 661, 667-68 (Tex. 1999).

Plaintiffs have failed to specify the ordinary purpose of the evaporator pan or the refrigerator or to allege facts showing the refrigerator and evaporator pan were or were not merchantable. They have also failed to allege any facts showing that the refrigerator and evaporator pan were defective at the time they left the manufacturer's or seller's possession.

For their claim of breach of implied warranty of fitness for a particular purpose, they allege (¶ 18),

> 18. Defendants further failed to disclose information concerning the subject refrigerator that was known at the time of the transaction. At that time of the purchase and sale of the subject refrigerator, Defendants knew of the particular purpose for which Plaintiffs Deeds required the subject refrigerator and its components. In particular, Defendants knew that the Plaintiffs intended to use the subject refrigerator in a particular manner. Relying on Defendants['] judgment, Plaintiffs purchased the subject refrigerator from Defendant. Defendants

-30-

delivered the subject refrigerator that was unfit for the Plaintiff's [*sic*] particular purpose. Plaintiffs subsequently notified Defendants of the breach. Plaintiffs have incurred both economic and actual damages.

As indicated under "Applicable Law" above, an implied warranty of fitness for a particular purpose "does not arise unless the particular purpose differs from the usual and ordinary use of the goods. In other words, the particular purpose must be some unusual, out of the ordinary purpose peculiar to the needs of an individual buyer." *Coghlan v. Aquasport Marine Corp.*, 75 F. Supp. at 774, *citing* Tex. Bus. & Com. Code Ann. § 2.315, Comment (2)("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer that is peculiar to the nature of his business."); *Sipes*, 946 S.W. 2d at 158-59 (no warranty of fitness for particular purpose where plaintiffs acquired airbags "for the general purpose for which they were designed."); *ASAI*, 932 S.W. 2d at 122 (no implied warranty of fitness for a particular purpose because "the record reveals no evidence that Appellant's particular purpose for the vacuum was somehow different than its ordinary use."). Plaintiffs have failed to identify such a particular purpose, and  or to allege any facts showing that Defendants knew of that purpose, that Plaintiffs relied on the seller to select an appropriate product, how the refrigerator was unfit for that particular purpose, and the nature of their damages. In sum, it appears their attorney was not

-31-

familiar with the law of warranty of fitness for a particular purpose.

Moreover while Plaintiffs have designated two non-retained expert witnesses, they have failed to comply with Rule 26's requirements regarding them.

After considering the circumstances here, the Court

ORDERS that Plaintiffs shall file within twenty days an amended complaint that satisfies the law and the pleading requirements for their warranty claims, if they can. They shall include an explanation why they did not meet Rule 26's requirements for their non-retained experts and why they should be allowed to try to cure their deficiencies. Defendants shall file a timely response. The scheduled dates for the pretrial order, docket call, and trial are VACATED. Therefore, the Court further

ORDERS that

(1) Defendants' second motion for summary judgment (#22) is DENIED as premature without prejudice to reasserting the arguments if and after Plaintiffs file the ordered amended pleading;

(2) Defendants' motion for continuance of trial setting (#28) is GRANTED for the reasons stated herein, but the Court will establish a new docket control schedule, if appropriate, after it reviews Plaintiffs' ordered third amended complaint and Defendants' responsive pleading;

(3) Defendants' motion for protective order (#35) is DENIED as

some discovery will be permitted, but new discovery should not be sought until the Court establishes a new schedule;

(4) Defendants' second motion to compel discovery requests (#32) that were timely made in its first motion (#11) is GRANTED and that discovery may be provided now; and

(5) Plaintiffs' Rule 26 motion for protective order (#34) is MOOT in light of the above orders.

**SIGNED** at Houston, Texas, this __17th__ day of __October__, 2016.

 

 

 

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE