IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUDITH DEEDS and DAVID DEEDS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civ. A. H-15-2208 |
| | § | |
| WHIRLPOOL CORPORATION and | § | |
| SEARS, ROEBUCK AND CO., | § | |
| | § | |
| Defendants. | § | |

## <u>OPINION AND ORDER OF DISMISSAL</u>

The new third amended complaint (instrument #48) in the above reference personal injury/products liability action, filed pursuant to Court order (#42), seeks dismissal of Plaintiffs Judith Deeds and David Deeds' remaining claims[1] for breach of express warranty and of implied warranties of merchantability and fitness for a particular purpose, arising out of personal injuries suffered by Judith Deeds when she slipped and fell in her home on October 21, 2012 on water that allegedly leaked from a cracked evaporator pan in a refrigerator manufactured by Defendant

---

[1] The Court previously dismissed all Plaintiffs' original claims for strict liability, negligence, the related evidentiary rule of *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior* as time-barred when it granted (#38) Defendants' first motion for summary judgment (#9). Before the Court issued its ruling, however, Plaintiffs filed a motion for leave to amend (#17) to add the new breach of warranty claims, which had four-year statutes of limitations, and which Magistrate Judge Frances Stacy granted (#24) on June 20, 2016, even though the discovery deadline had expired.

Whirlpool Corporation ("Whirlpool"),[2] a "manufacturer" under Tex. Civ. Prac. & Rem. Code § 82.001(4), and sold to Plaintiffs on or about June 18, 2012 by Defendant Sears, Roebuck and Co.("Sears"), located at Memorial City Mall, Houston, Texas, a "seller" under Tex. Civ. Prac. & Rem. Code § 82.001(3).[3] Pending before the Court are the following matters:

1.   Plaintiffs David Deeds and Judith Deeds' court-ordered response to the Court's Opinion and Order of October 17, 2016 to explain why they failed to meet Rule 26's requirements for non-retained experts and why they should be permitted to try to cure their deficiencies;

2.   Defendants Whirlpool and Sears's third motion for summary judgment (instrument #48);

3.   Plaintiffs David Deeds and Judith Deeds' motion for reconsideration (#50) of the Court's Opinion and Order of October 17, 2016 (#42); and

---

[2] It was a side-by-side refrigerator, Model ED2SHEXXQ00, Serial No. HR22177644.

[3] Section 82.001(4) defines "manufacturer" as "a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component thereof and who places the product or any component part thereof in the stream of commerce."
Section 82.001(3) provides, "'Seller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component thereof."

4.  Plaintiffs' motion for oral hearing (#54) on their motion for reconsideration.

As a threshold matter, after carefully reviewing all the extensive briefing, the Court finds that an oral hearing would not be helpful and denies Plaintiffs' motion (#54).

## Procedural History

According to the Original Petition (#1-1, Ex. A, at ¶¶ 6.1-6.2), Plaintiffs purchased a refrigerator, which was designed, produced, and packaged by Whirlpool, on June 18, 2012.  It was delivered to Plaintiffs' home and installed by Sears agents or employees on or about June 20, 2012.  *Id.* at § 6.2.  Judith Deeds was seriously injured on October 21, 2012 (#1-1, Ex. A, ¶ 6.3), when she slipped and fell on water that leaked from a cracked evaporator pan in the allegedly defective refrigerator.

Plaintiffs filed their Original Petition in the 164th Judicial District Court, Harris County, Texas, on October 17, 2014, alleging state-law claims of strict liability, negligence, the related evidentiary rule of *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior*, only four days before the two-year statute of limitations under Tex. Prac. & Rem. Code Ann. § 16.003(a) for these claims was to expire.  *Murphy v. Campbell* 964 S.W. 2d 265, 270 (Tex. 1997).  The statute begins to

run when the wrongful act caused the legal injury,[4] i.e., in the Deeds' case, when Judith Deeds allegedly slipped and fell because of the water leaking from the evaporator pan of the purportedly defective refrigerator on October 21, 2012. Nevertheless Plaintiffs did not serve Whirlpool with process until July 8, 2015 (#1, Ex. B), nor serve Sears until July 13, 2015 (#1, Ex. C).[5]

---

[4] *See Moreno v. Sterling Drug, Inc.*, 787 S.W. 2d 826, 827 (Tex, 1990)("[A] cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury.").

[5] Under Texas law, to "bring suit" a plaintiff must not only file a petition within the limitations period, but must also exercise due diligence in having process issued and served on the defendant. *Gant v. DeLeon*, 786 S.W. 2d 259, 260 (Tex. 1990)(*per curiam*). In *Ashley v. Hawkins*, 293 S.W. 3d 175, 179 (Tex. 2009)(citations omitted), the Texas Supreme Court opined,

> If a party files its petition within the limitations period, service outside the limitations period may still be valid if the plaintiff exercises diligence in procuring service on defendant. When a defendant has affirmatively pleaded the defense of limitations, and shown that service was not timely, the burden shifts to the plaintiff to prove diligence. Diligence is determined by asking "whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." Although a fact question, a plaintiff's explanation may demonstrate a lack of diligence as a matter of law, "when one or more lapses between service efforts are unexplained or patently unreasonable." Thus [the plaintiff] has the burden to "present evidence regarding the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay."

The *Ashley* court found that the plaintiff failed to exercise due diligence necessary to validate service on the defendant almost a year after the statute of limitations expired. *Id. See also Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W. 3d 338

Defendants removed this action to federal court on diversity jurisdiction on July 31, 2015.

On April 15, 2016 Sears and Whirlpool filed their first motion for summary judgment (#9) on statute of limitations grounds, followed by a second one (#22) on June 9, 2016. In the latter they additionally argued that parties in products liability lawsuits must designate a liability expert to satisfy their burden of proof, but that Plaintiffs had not done so, and thus Defendants are entitled to judgment as a matter of law on all claims asserted against them. *Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W. 3d 131, 137 (Tex. 2004) and its progeny. On October 11, 2016 the Court granted the first motion for summary judgment and dismissed as time-barred Plaintiffs' claims for strict liability, negligence, the related evidentiary rule of *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior* in the Original Petition (#38).

Meanwhile, on May 19, 2016 Plaintiffs had moved for leave to amend (#17), and on June 20, 2016 Magistrate Judge Francis Stacy granted that motion (#24), even though Defendants opposed the motion on a number of grounds (#21): (1) the untimeliness of the motion and/or undue delay in litigating (as evidenced in Plaintiffs' filing their Original Petition four days before their limitations period expired, neglecting to serve Defendants for

(Tex. May 8, 2015).

another nine months, and the scheduling order's November 4, 2015 deadline for amending the complaint was January 15, 2016, which Plaintiffs failed to respect in moving for leave to amend four months later (#17)); (2) futility of the claims to be added since Defendants had filed their first motion for summary judgment (#9) on valid statute of limitations grounds (Defendants subsequently filed their motion for leave to amend to add the breach of warranty claims with longer limitations period, apparently to negate the effect that the first summary judgment motion would have if granted). Furthermore because Judge Stacy erroneously applied the standard of Rule 15(a) in granting Plaintiffs' motion for leave to amend to add the three breach of warranty claims, instead of the correct Rule 16(a), this Court will reexamine that order here.

In addition on March 18, 2016 Defendants served Plaintiffs with Defendants' First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admissions. Under Federal Rule of Civil Procedure 33(b)(2), Plaintiffs had thirty days to respond, in other words until April 18, 2016, but they also failed to meet this deadline. Defendants then filed their first motion to compel (#11 & 12) on May 3, 2016, in which they also charged that Plaintiffs designated David Deeds as an expert witness, but failed to provide the required summary of facts and opinions about which Deeds was expected to testify (Rule

26(a)(2)), and sought a court order requiring David Deeds to comply with Federal Rule of Civil Procedure 26(a)(2)(C)(i) and (ii).

The Response (#15) by Plaintiffs' counsel to Defendants' motion to compel (#11 & 12), filed on May 16, 2016, claimed that counsel was out of his office for healthcare mediation training with the American Arbitration Association in New York City from March 16-20, 2016, and then he went to a settlement conference in New Orleans for a different case filed in Louisiana. He also claimed that the deadline for filing a response to Defendants' first motion for summary judgment (#9, filed on April 15, 2016) "interrupted and delayed the Plaintiffs' Response to Defendants' First Set of Interrogatories to Judith Dean and First Request for Production to Plaintiffs since Plaintiffs' preparation of their response to Defendants' First Motion for Summary Judgment had to take priority . . ." #15 at p. 2. He cites no authority that being busy with other tasks for other cases excuses a failure to respond timely. He also does not explain why he did not file a motion asking for an extension. Plaintiffs filed their Rule 26 Disclosures and their responses to Defendants' First Requests of Admissions on or about April 2, 2016. In their Rule 26 Disclosures, Plaintiffs stated regarding David Deeds' designation that Deeds was not "retained or specially employed to provide testimony" and therefore their Disclosures fully complied with

Rule 26(a)(2)(C)(i) and (ii). #15 at p.2. Furthermore Plaintiffs waited until this response, #15 at p. 2, filed on May 16, 2016, to ask for an extension of time to file discovery responses. *Id.*

On June 20, 2016 Plaintiffs filed their amended complaint (#25) asserting some of the same limitations claims that the Court dismissed that same day, but also the newly added claims for breach of warranty, both express and implied, which are subject to a four-year statute of limitations. Tex, Bus. & Com. Code Ann. § 2.725.

The Court's Opinion and Order of October 11, 2016 (#38) granted Defendants' first motion for summary judgment (#9) on the grounds that Plaintiffs' claims of strict product liability, negligence, *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior* were time-barred. In its Opinion and Order of October 17, 2016 (#42), the Court reaffirmed the dismissal of the claims for strict liability, negligence, the related evidentiary rule of *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior* and addressed the remaining claims of breach of express warranty and breach of implied warranties of merchantability and of fitness for a particular purpose. The Court identified the elements of the different warranties, pointed out other characteristics, noted when expert testimony is required under each, and distinguished between retained and non-retained expert witnesses. In the same

-8-

Opinion and Order (*id.* at pp. 25-32) the Court went into great detail about why Plaintiffs' amended complaint failed to satisfy the requirements of Rule 12(b)(6) in pleading these claims and highlighted the fact that Plaintiffs failed to serve Defendants with their Original Petition until July 13, 2015, **nearly nine months after the two-year statutes of limitations for personal injury for Plaintiffs' claims for strict liability, negligence (and *res ipsa loquitur*), negligent misrepresentation, and *respondent superior* had expired**, and emphasized Plaintiffs' patent lack of diligence in this litigation. The Court granted leave to Plaintiffs to file an amended complaint that would satisfy the law and the pleading requirements for their warranty claims, which were added to their pleadings with Magistrate Judge Stacy's approval, and to explain why Plaintiffs had not satisfied Federal Rule of Civil Procedure's requirements for their non-retained experts and why they should now be allowed to cure their deficiencies. Given Plaintiffs' deficient pleadings, the Court denied as premature Defendants' second motion for summary judgment without prejudice to their rearguing their claims if they filed a third amended complaint and it survived any motions to dismiss. The Court further ordered Plaintiffs to file the amended complaint by November 7, 2016. Plaintiffs filed this new [third amended] complaint (#48) right on that deadline.

**Applicable Law**

For a timely lawsuit, Plaintiffs must bring suit within the applicable limitations period **and** use due diligence to serve defendant with process (emphasis added by this Court). *Gant v. Deleon*, 786 S.W. 2d 259, 260 (Tex. 1990)(Finding that although suit was timely filed within the statute of limitations, plaintiff was not served until more than six years after the suit was filed and almost eight years after the accident. "When a plaintiff files a petition within the limitations period, but does not serve the defendant until after the statutory period has expired, the date of service relates back to the date of filing if the plaintiff exercised diligence in effecting service."), *citing Zale v. Rosenbaum*, 520 S.W. 2d 889, 890 (Tex. 1975)(*per curiam*). "To obtain summary judgment on the grounds that an action was not served within the applicable limitations period, the movant must show that, as a matter of law, diligence was not used to effectuate service." *Id.*, *citing id. See, e.g., DeLeon v. Gant*, 773 S.W. 2d 396, 397 (Tex. App.--San Antonio 1989)("The existence of diligence is usually a question of fact, but if no excuse is offered, or if the lapse of time and the plaintiff's acts conclusively negate diligence, a lack of diligence will be found as a matter of law"), *overruled*, 786 S.W. 2d 259 (Tex. 1990)(reversing because plaintiffs' unexplained delay of three periods totaling 38 months in 6 years in obtaining service on defendant established failure to use diligence as a matter of

law); *Perkins v. Groff*, 936 S.W. 2d 661, 667-68 (Tex. App.--Dallas 1996, writ denied)("Mere filing of suit will not interrupt the running of limitations unless due diligence is exercised in issuance and service of citation."); *Rigo Manufacturing Co. v. Thomas*, 458 S.W. 2d 180 (Tex. 1970)(dismissed for lack of diligence in seventeen and one-half months delay in the issuance and service of citation), *citing Ricker v. Shoemaker*, 81 Tex. 22, 26 S.W. 645 (1891); *Primate Constr., Inc. v. Silver*, 884 S.W. 2d 151, 153 (Tex. 1994)("It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished."); *Broom v. McMaster*, 992 S.W. 2d 659, 664 (Tex. App.--Dallas 1999)("The purpose behind a statute of limitations is not only to encourage a plaintiff to prosecute her claims within a certain period of time, but just as important, to advise the defendant of the claims against him in a timely fashion so that he may prepare his defense and preserve evidence before the lapse of time has rendered this process difficult, if not impossible.").

Summary judgment may be granted when service of suit is accomplished beyond the limitations period. *Murray v. San Jacinto Agency, Inc.*, 800 S.W. 2d 826, 830 (Tex. 1990). The two year limitations period for Plaintiffs' claims of strict liability, negligence, the related evidentiary rule of *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior* expired on

October 21, 2014. Plaintiffs did not serve Defendants until July 13, 2015, a passage of nearly nine months since the statute of limitations expired. If the petition is filed within the limitations period but the defendants is not served until that period has expired, the date of service relates back to the date of filing **if the plaintiff exercises due diligence in obtaining service.** *Gant v. DeLeon*, 786 S.W. 2d 259, 260 (Tex. 1990). It is the responsibility of the party requesting service to ensure it is properly and timely effected. *Belleza-Gonzalez v. Villa*, 57 S.W. 3d 8, 11 (Tex. App.--Houston [14th Dist.] 2001). Delay in serving the defendant may constitute cause for dismissal of the plaintiff's petition only if the plaintiff failed to exercise due diligence in attempting to effect service. *Id.* at 11 ("Lack of due diligence in serving process on a defendant has been found as a matter of law after a five and four-fifths of a month delay."), *citing Hansler v. Mainka*, 807 S.W. 3d, 5 (Tex. App.--Corpus Christi 1991, no writ)(five and four-fifths month delay); *Webster v. Thomas*, 5 S.W. 3d 287, 289 (Tex. App.--Houston [14th Dist.] 1999, no pet.)(five months delay); *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W. 2d 587, 590 (Tex. App.--Corpus Christi 1994, no writ)(five months); *Butler v. Ross*, 836 S.W. 2d 833, 835-36 (Tex. App.--Houston [1st Dist.] 1992, no writ); *Allen v. Bentley Labs., Inc.*, 538 S.W. 2d 857, 860 (Tex. App.--San Antonio 1976, writ ref'd, n.r.e.)(almost six months delay); *Weaver v. E-Z Mart*

-12-

*Stores, Inc.*, 942 S.W. 2d 167, 169-70 (Tex. App.--Texarkana 1997)(service of process nine months after the running of the statute of limitations).  Initially Defendants bear the burden of conclusively showing the limitations bar; if they succeed, the burden shifts to Plaintiffs to demonstrate their exercise of due diligence; if Plaintiffs succeed, Defendants must then demonstrate why that exercise was not sufficient to relate the date of service back to the date of filing.  *Belleza-Gonzalez*, 57 S.W. 3d at 11. While generally the existence of due diligence is a question of fact, if plaintiff provide no excuse for untimely service "or if the lapse of time and the plaintiff's acts are such as conclusively negate diligence, a lack of diligence will be found as a matter of law."  *Perry v. Kroger Stores, Store No. 119*, 741 S.W. 2d 533, 534 (Tex. App.-Dallas 1987, no writ).  *In accord, e.g., Webster*, 5 S.W. 3d at 289; *McCord v. Dodds*, 69 S.W. 3d 230, 233 (Tex. App.-Corpus Christi 2001, pet. denied).

Among the lapses of time that courts have recognized as conclusively negating diligence include plaintiffs' excuses for delay[6] or failure to pay the fee necessary for issuance of citation[7] or when one or more lapses between service efforts are

---

[6] *Reynolds v. Alcorn*, 601 S.W. 2d 785, 788 (Tex. Civ. App.-Amarillo 1980).

[7] *Klemm v. Shroeder*, 204 S.W. 2d 675m 677 (Tex. Civ. App.--San Antonio 1947, no writ).

unexplained or patently unreasonable.[8]

Since this action involves personal injuries resulting from an alleged of breach of express and/or implied warranty out of the sale of goods, the applicable statute of limitations under Texas law is Texas Business & Commercial Code Ann. § 2.725.[9] *Garcia v. Texas Instruments, Inc.*, 610 S.W. 2d 456 (Tex. 1980)(holding that the Texas UCC warranty provisions establish a cause of action for personal injuries and are governed by the four-year limitations provision of UCC article 2.725); *Garvie v. Duo-Fast Corp.*, 711 F. 2d 7, 48 (5th Cir. 1983). While the *Garcia* court considered that the time of tender of delivery of the goods might be the time of accrual, the Texas Supreme Court made it clear that a cause of action for breach of implied warranty on contract "accrues at the time of delivery, not at the time of discovery . . . 'regardless

---

[8] *Gant*, 786 S.W. 2d at 260.

[9] The relevant portion of § 2.725 provides,

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may extend it.

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warrant explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

-14-

of the aggrieved party's lack of knowledge of the breach." *See also Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1325 (5th Cir. 1981)(holding that a cause of action for breach of implied warranty accrues on the date of tender of delivery to the consumer of the defective goods); *Timberlake v. A.H. Robins Co., Inc.* 727 F.2d 1363, 1367 (5th Cir. 1984). Thus Plaintiffs' claims accrued on June 20, 2012.

**Plaintiffs' Response (#45) to Court's Opinion and Order (#42)**

As their explanation (#45) for the deficiencies pointed out in the Court's Opinion and Order (#42), Plaintiffs state that they complied with Rule 26 and especially relied on Rule 26(a)(2)(A)("*Disclosure of Expert Testimony*")[10], (B)("*Witnesses Who Must Provide a Written Report*"),[11] and 26(a)(2)(C)("*Witnesses Who*

---

[10] Rule 26(a)(2)(A) states, "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

[11] Rule 26(a)(2)(B) states,

Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witnesses will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

*Do Not Provide a Written Report"*),[12] as well as on the 2016 edition
of *O'Connor's Federal Rules--Civil Trials*. Plaintiffs understood
that Rule 26(a)(2)(B) identified which witnesses  must provide a
written report, "prepared and signed by the witness--if the
witness is one retained or specially employed to provide expert
testimony in the case . . ."  Since they believed none of the
expert witnesses designated by Plaintiffs was "retained" or
"specially employed" to provide expert testimony, they thought
they were not required to provide a report "prepared and signed
by the designated witnesses."  Moreover Rule 26(a)(2)(C)
particularly identified in brief paragraph form the "subject

_____

(iii) any exhibits that will be used to summarize or
support them;

(iv) the witness's qualifications, including a list of
all publications authored in the previous ten years,
the witness testified as an expert at trial or by
deposition; and

(v) a statement of the compensation to be paid for the
study and testimony in the case.

[12] Rule 26(a)(2)(C)(*"Witnesses Who Do Not Provide a Written
Report"*) provides,

 "Unless otherwise stipulated or ordered by the court, if the
witness is not required to provide a written report, this
disclosure must state:

(i) the subject matter on which the witness is expected
to present evidence under Federal Rule of Evidence 702,
703, or 705; and

(ii) a summary of the facts and opinions to which the
witness is expected to testify.

matter on which the expert was to present evidence under Federal

Rules of Evidence 702,[13] 703,[14] or 705,[15] while Rule 26(a)(2)(C)(i)

and (ii) provides a summary of the facts and opinions about which

---

[13] Federal of Evidence 702 provides,

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

[14] Federal Rule of Evidence 703 provides,

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

[15] Federal Rule of Evidence 705 states,

Unless the court orders otherwise, an expert may state an opinion--and give the reasons for it--without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

the witness is expected to testify.

In their Rule 26 Disclosures (#7), Plaintiffs identified Defendant Sears' service technician, Than Pham, the repairman who came to Plaintiffs' home to repair their purportedly defective refrigerator, as a person with "knowledge of relevant facts regarding the service and repair on the product [in question]." Nevertheless Plaintiffs admit to some weakness in their submissions: "If not expressly stating, at least implying, that the subject matter of his testimony would be regarding the service and repairs he made to the refrigerator[,] including his opinions regarding his findings from his service and repair. Though obviously not as detailed as set out in Rule 26, Plaintiffs have conveyed the extent of their knowledge regarding subject matter and opinions that Mr. Pham may possess regarding his expected testimony." #45 at p. 2. They insist, "Mr. Pham is, in fact, an employee and/or agent of Defendant Sears whose knowledge regarding Mr. Pham's opinions is superior to the Plaintiffs[']. The Defendants have in no way been prejudiced or surprised regarding the testimony of [their] own employee." *Id.*

Plaintiffs' second, designated, non-retained expert in their Rule 26 Disclosures of expert witnesses is Eric Sabonghy, M.D. They identify him as the "Doctor possessing knowledge relative to Plaintiff Judith Deeds' injuries, rehabilitation, and costs." #45 at p. 3. Plaintiffs refer Defendants to Dr. Sabonghy's medical

records for opinions (all of which have been produced) about what he might be expected to testify at trial, which Plaintiffs claim is "essentially the same information required by the Rule," putting Defendants on notice that he would testify about Judith Deeds' medical treatment and the witnesses' opinions about diagnosis, treatment, prognosis, and cost of her medical care. Defendants have not been prejudiced by Plaintiffs' delay because Plaintiffs maintain that they have produced all of Plaintiffs' medical records and billing records, including those from Dr. Sabonghy.

Plaintiffs contend that both designated witnesses were non-retained because they were not paid to "draw opinions from facts supplied by others in preparation for trial; neither's opinions were developed by others in preparation for trial," nor "were developed either for purposes of litigation or as part of the witnesses' duties as the [Plaintiffs'] employee." *Id.* Plaintiffs concede that "although the information provided by Plaintiffs could have been more detailed, it adequately identified the subject matters about which the witnesses would testify . . as well as provided a summary of  of the facts and opinions to which the witnesses were expected to testify." *Id.* Moreover, since the Court had already granted Plaintiffs' motion for a continuance, Plaintiffs can cure any deficiencies in their disclosures by supplementing their Rule 26 Disclosures in compliance with the

requirements of Rules 26(a)(Required Disclosures) and 26(e)(Supplementing Disclosures and Responses).

Finally with respect to explaining Plaintiffs' failure to disclose, they admit that they "have attempted to show that, although cryptic in form, the information provided by them in Plaintiffs' Rule 26 Disclosures regarding non-retained expert witnesses was made in good faith and was an attempt to convey the essential information required by the Rule. As the Court has duly noted, the Plaintiffs' Disclosures could benefit from more detail to be fully compliant and the Plaintiffs request that the Court accept their explanation and grant them time to cure the deficiencies identified in the Court's [Opinion and order] of October 17, 2016." #45 at p. 5.

### Defendants' Reply (#46) Regarding Compliance

### With Rule 26(a) And (e) About Non-Retained Expert Witnesses

Defendants reply that "[a]fter being given yet another chance to designate--or justify the deliberate failure to designate--a liability expert witness in support of their product liability claims, Plaintiffs have only doubled down and reiterated their position that no such expert was needed for their claims." #46 at p.1. Plaintiff had represented that they would rely on a Sears employee to meet their *prima facie* burden, but Defendants maintain that this employee, alone, is not sufficient to sustain their case-in-chief. Furthermore, because Plaintiffs still have not

complied with the Court's Opinion and Order and because they still
do not have a qualified liability expert to offer opinions to
support their product liability claims, Defendants ask the Court
to dismiss this case with prejudice.

## Plaintiffs' Response (#49)

Plaintiffs contend that (1) Texas law does not require the
designation of expert witnesses to prove causation in all product
liability cases, nor does it require an expert witness or direct
evidence to establish a products liability defect in breach of
warranty cases; and (2) Plaintiffs' non-warranty claims are not
subject to dismissal until the Court rules on their motion for
reconsideration (#49, Ex A).  The responses to Defendants' motion
for summary judgment therefore raise genuine issues of material
fact precluding a ruling on it.

Plaintiffs claim that Defendants bear the burden of proof on
summary judgment.  The elements of a strict product liability
cause of action are (1) a product defect existed at the time the
product left the manufacturer's hands; (2) the defect made the
product unreasonably dangerous; and (3) the defect was a producing
cause of the plaintiff's injuries. *Parsons v. Ford Motor Co.*, 85
S.W. 3d 323, 329 (Tex. App.--Austin 2002, pet. denied), *citing*
*Rourke v. Garza*, 530 S.W. 2d 794, 801 (Tex. 1975).  A plaintiff
can prove a manufacturing defect simply by producing evidence of
the product's malfunction. *General Motors Corp. v. Hopkins*, 548

S.W. 2d 344, 349-50 (Tex. 1977). Usually expert testimony is not required to establish a manufacturing defect. *Sipes v. General Motors Corp.*, 946 S.W. 2d 143, 156 (Tex. App.--Texarkana 1997, writ denied.).

Plaintiffs argue that they have designated an expert witness, i.e., Pham, but alternatively they are not required to designate "liability" expert witnesses in the instant suit because under Texas law, lay testimony is sufficient to prove causation in cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition. *Kallassy v. Cirrus Design Corp.*, No. Civ. A. 3:04-CV-072N, 2006 WL 1489, at *5 (N.D. Tex. May 30, 2006)("Correspondingly, "when the causal link is beyond the jury's common understanding, expert testimony is necessary."). Plaintiffs conclusorily state that here the facts forming the basis of the causal link are not beyond a jury's common understanding and a jury of common lay persons will not have difficulties in understanding the causal link here: ""(1) The subject refrigerator sustained a cracked evaporator pan which caused the accumulation of water on the Deeds' kitchen floor; (2) Plaintiff Judith Deeds slipped on the water puddle causing severe injuries; and (3) Plaintiffs have direct evidence substantiating the cracked evaporator pan and the injuries sustained therefrom." #49 at p. 7. A jury is warranted to hear the claims and disputes

in this matter.

In *Sipes,* 946 S.W. 2d at 147-48, the trial court granted summary judgment based on the plaintiff's failure to designate an expert witness to show the air bag which failed to deploy was defective, but the court of appeals reversed, holding that if a plaintiff has no evidence of a specific design defect or manufacturing defect, he may offer evidence of the product's malfunction as circumstantial proof of the defect.[16]

---

[16] Disagreeing with Plaintiffs and *Sipes*, this Court would point out that in *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W. 3d 797, 807 (Tex. 2006), the Texas Supreme Court opined,

> Texas law does not generally recognize a product failure standing alone as proof of a product defect. "The inference of defect may not be drawn . . . from the mere fact of a product-related accident." *[Ford Motor Co. v. Ridgeway*, 135 S.W. 3d 598, 602 (Tex. 2004] (quoting *Restatement (Third) of Torts: Products Liability* § 3 reporters' note to cmt. d (1998). The mere fact that the tire failed would amount to evidence of a manufacturing defects "so slight as to make any inference a guess [and] is in legal effect no evidence." *Id.* at 601. As we discussed in [*General Motors Corp. v. Hopkins*, 548 S.W. 2d 344 (Tex. 1997), *overruled on other grounds*, *Duncan v, Cessna Aircraft Co.*, 665 S.W. 2d 414 (Tex. 19840]], circumstantial evidence of a product defect may be offered, but where, in another case, "[t]he record contained no proof of the [product's] defect except the malfunction itself," and the product has been in use for years and subjected to many adjustments and changes, the cause of the product failure and proof of original defect could not be answered except by speculation." 548 S.W. 2d at 349-50. . . . "[T]he mere fact that a tire has a tread separation does not mean that the tire is defective."

-23-

## Defendants' Third Motion for Summary Judgment (#48)

Defendants seek dismissal of the breach of warranty claims for failure to designate any expert witness to offer opinion testimony on their product liability claims.

On April 1, 2016 Plaintiffs filed their Designation of Expert Witness List (#7), which listed among others as non-retained expert witnesses (1) "Pham," the Sears technician who replaced the evaporator pan in the Deeds' refrigerator and will serve as a fact witness, and (2) Plaintiff David Deeds as having "expert knowledge regarding industrial plastics from his work in the manufacturing industry." Furthermore, Plaintiffs maintain, as non-retained witnesses, neither man was required to prepare a report or render any opinions at this time.

Defendants' motion to compel in part challenged the designations as inadequate, especially that for David Deeds, because it did not comply with Rule 26(a)(2)(C)(i) and (ii). When Plaintiffs responded insisting that their designation fully complied with the Rule, Defendants highlighted the absence of any indication of the subject matter of the testimony to be presented and of a summary of those opinions (#16). In reply, Plaintiffs then conceded that Deeds would only be used as a rebuttal witness (#18, ¶ 2). Defendants next filed their second motion for summary judgment seeking judgment as a matter of law on the grounds that Plaintiffs failed to designate a liability expert witness to

satisfy their *prima facie* burden of proof.  #22.  In its Opinion and Order of October 11, 2016 (#38), the Court observed that no matter whatever manner the Plaintiffs pleaded their claims, i.e., strict liability, negligence, *res ipsa loquitur*, or breach of warranty, all of them were product liability claims that required expert witness opinion testimony.  After reviewing Defendants' second motion for summary judgment, the Court gave Plaintiffs the opportunity to provide an explanation of why they did not satisfy Rule 26's requirements regarding these two non-retained expert witnesses and why they should be allowed to attempt to cure their failure.  #42 at p. 32.

Nevertheless, even though the scheduling order set April 1, 2016 as the deadline for Plaintiffs to designate expert witnesses, Plaintiffs still have not identified any liability expert for their case-in-chief nor moved for leave to name one, but instead have asserted that their failure to comply was unintentional and a "good faith attempt to convey the essential information required by the Rules."  #45, ¶ 10.  They state they focused on Pham and treating physician Dr. Sabonghy (also on the List), but not on Deeds.

Finally Defendants argue that *res judicata* should bar the second amended complaint because Plaintiffs have already had their claims for strict liability, negligence, negligent misrepresentation, *respondeat superior*, and *res ipsa loquitur*

decided on the merits and dismissed based on limitations (#9), on October 16, 2016. They cannot revive their claims through the Second Amended Complaint without moving the Court for reconsideration to reverse its previous judgment. Not only are they time-barred, but they are subject to the same requirement for expert testimony as the breach of warranty claims. *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W. 3d 131, 137 (Tex. 2004).

## Plaintiffs' Response (#51) to #46

Challenging what Plaintiffs say is an untimely objection to the designation of Pham as an expert witness and to Defendants' attempt to use their reply to a nonexistent motion, in addition to their objection to Pham's declaration[17] and any conversation

---

[17] In his deposition, Pham claims he is not an expert in the appliances at issue here:

> While I am aware of the facts surrounding my removal and installation of an evaporator pan, my knowledge regarding the claims made by the Deeds ends there. I am not an expert in the design, manufacturing, or marketing of refrigerators and cannot offer opinions about such topics. In particular, although I did discover the cracked evaporator pan in the refrigerator, I cannot offer and do not have any opinions as to when, how, or why it cracked, the materials used in connection with its manufacture, or anything other than the facts I observed when I was at the residence of the Deeds family.
>
> Moreover, I do not have any special skills or training on the design, manufacturing, or marketing of refrigerators generally or evaporator pans specifically. While I have knowledge of some factual observations as set forth above, I am not qualified as an expert nor do I feel competent to offer expert opinion testimony. . . .

-26-

Plaintiffs' counsel had with Pham, Plaintiffs request an opportunity to depose Pham before any further court action so they can challenge the veracity of statements made in Pham's Declaration (#46, Ex. A). Plaintiffs point out that Defendants have assumed that Mr. Jefferson knew Pham worked for Sears has no basis in fact. They further assert that Mr. Jefferson has never been adjudged to have violated a Texas Disciplinary Rule of Professional Conduct in over 30 years of practicing law, and he was a former State District Judge.

**Plaintiffs' Motion for Reconsideration (#50) of #38**

*Standard of Review*

    Although the Federal Rules of Civil Procedure do not

---

When he was subpoenaed at his place of employment to appear for a deposition in this case, telling him to contact Plaintiffs' counsel to discuss the case, he stated that "[a]t no time did Mr. Jefferson tell me he was prohibited from speaking to me":

> I contacted Mr. Jefferson and he proceeded to discuss the case with me generally, as well as asking me specific questions about what I saw and did while at the Deeds' residence, and what I told them when I was there. At no time did Mr. Jefferson ask me whether I had an attorney or whether I had obtained permission from Sears or its attorney to speak with him without an attorney present. At no time did Mr Jefferson tell be he was prohibited from speaking with me.

> It was not until I spoke with the attorneys for Sears that I learned that Mr. Jefferson was prohibited from speaking to me on the substance of the lawsuit by the rules that govern attorney conduct in the State of Texas. I learned that, since it appeared that Mr. Jefferson knew I was a current employee of Sears, he should have arranged to speak with me through the attorneys who represented Sears. . . .

recognize a general motion for reconsideration, courts address such motions under Rule 54(b) for interlocutory orders or under Rules 59(e) (a motion to alter or amend) and 60(b) (a motion for relief from final judgments). *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009), *citing Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir. 1991); *Cressionnie v. Hample*, 184 Fed. Appx. 366, 369 (5th Cir. June 6, 2006 (If a motion for reconsideration "challenges the prior judgment on the merits, we treat it as a motion to alter or amend judgment under Rule 59(e) or a motion for relief from judgment under Rule 60). The Court's October 11, 2016 Opinion and Order of Dismissal was an interlocutory order, leaving the breach of warranty claims pending.

Federal Rule of Civil Procedure 54(b)(**"Judgment on Multiple Claims or Involving Multiple Parties"**), which, although not completely clear, appears to govern the reconsideration of interlocutory orders[18] and provides,

> When an action presents more than one claim
> for relief--whether as a claim, counterclaim,
> crossclaim, or third-party claim--or when
> multiple parties are involved, the court may
> direct entry of a final judgment as to one or
> more, but fewer than all, claims or parties
> only if the court expressly determines that
> there is no just reason for delay.

---

[18] *Merrell v. Hartford*, Civ. A. No. C-08-348, 2009 WL 3063323, at *1 (S.D. Tex. Sept. 22, 2009); *Barzelis v. Flagstar Bank,* Action No. 4:12-CV-611-Y, 2013 WL 12126117, at *1 (N.D. Tex. May 31, 2013).

> Otherwise, any order or other decision,
> however designated, that adjudicates fewer
> than all the claims or the rights and
> liabilities of fewer than all the parties
> does not end the action as to any of the
> claims or parties and may be revised at any
> time before the entry of a judgment
> adjudicating all the claims and all the
> parties' rights and liabilities.

It is within the discretion of the court whether to grant a motion to reconsider an interlocutory order. *Merrell*, 2009 WL 3063323, at *1, *citing Viasek v. Wal-Mart Stores, Inc.*, No. H-07-0386, 2008 WL 167082, at *1 (S.D. Tex. Jan. 16, 2008)("Motions to reconsider interlocutory orders are left to the court's discretion so long as not filed unreasonably late."). Nevertheless, "delaying tactics to avoid trial should not be encouraged." *Martinez v. Bohls Equip. Co.*, No. SA-04-CA-0120-XR, 2005 WL 1712214, at *1 (W.D. Tex. July 18, 2005).[19] A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).*Substance of the Motion*

Plaintiffs contend there is a question of fact about their exercise of due diligence in serving Defendants with their

___

[19] In *Martinez*, the defendant, who filed the motion for reconsideration, had been on notice for more than four months about the genuine issues of material fact that the Court had found remained in the case, but filed a motion for reconsideration only a month before the case was set to go forward for trial. The Court held that the motion was filed unreasonably late.

Original Petition.  Moreover the cases cited by Defendants are distinguishable on their facts from the instant action and the information Defendants provided was false and misleading, insist Plaintiffs.  First they refer to Plaintiffs' Exhibit A to #50, their requested citation on October 17, 2014 with their petition, which they argue shows their "intent to obtain service on Defendants at that time; although the civil request form was generated in Plaintiffs' counsel's office, it was not filed with the petition."  They then explain that "at that time Plaintiffs' counsel had a temporary secretary who was apparently unfamiliar with the District Court's filing procedures and the citations though issued were held for pickup in the District Court's office. The fact that the civil request form was prepared and citation was requested [five months late] is more that [a] scintilla of evidence that Plaintiffs intended to obtain service of process at the time suit was filed and is some evidence of due process."  #50 at p. 2.

The Court disagrees, finds that intent does not equal action, and the failure to follow up and check on the matter is evidence of negligence and a lack of diligence.  Moreover Plaintiffs concede that their firm did not pay the required fee of $90, but they claim the statement that they paid was not "false" because they did pay a fee of $55.00, which Plaintiffs assert is not "evidence of a lack of due diligence, but rather, evidence of

confusion and/or lack of knowledge on the part of Plaintiffs'
counsel's office to know the accurate fee amount for service to
the Secretary of State. The evidence at minimum if viewed in the
light most favorable to the Plaintiffs, is that Plaintiffs were
attempting to get service of citation effectuated." #50 at p. 4.
Plaintiffs continued, when counsel became aware of the failure to
file the civil request form on March 25, 2015, Plaintiffs filed
with the District Clerk a civil process request form, copy
attached as Exhibit B. Plaintiffs attempt to challenge the
Court's statement (#38 at p.9) that "the evidence shows
[Plaintiffs] did nothing from October 17, 2014 to March 25, 2016,
to effectuate service."

The Court is not persuaded by Plaintiffs' arguments.
Ironically more facts demonstrating Plaintiffs' lack of diligence
than the exercise of it are provided in the affidavit of
Plaintiffs' counsel's legal secretary at the time, Rae N. Reece
(Exhibit C to #50):

> 5. ". . . . The Citations were prepared and held 'For
> Attorney Pickup' instead of forwarding them to the
> Secretary of State for service because the correct fee
> had not been paid. When the thirty days had passed and
> no one from our office picked up the Citations from the
> Clerk's office, they were destroyed. I cannot
> ascertain if anyone here in the office was ever
> notified to pick up those Citations.
>
> 6. "In March of 2015, when [counsel] learned that
> defendants in this matter had not been served, he asked
> his then secretary, LaTonya McPherson, to handle this
> and get the defendants served. She refiled the Civil
> Process Request form on March 25, 2015, requesting

service by Certified Mail through the Secretary of State. Again, sufficient fees for this service were not paid. She paid the fee for issuance of Citation for service by Constable, but not the bulk of the fees required for Secretary of State/Certified Mail. This time the citations were prepared on April 2, 2015, and then mailed to the attorney since the correct fee was not paid. Those Citations were found loose in the file with no indication of any further action having been taken to have them served.

7. "On June 17, 2015, I refiled the Civil Process Request Form requesting issuance of Citations and service by the Secretary of State by Certified Mail. With the help of the Clerk of the 164th and the Civil Intake Clerk, and my co-worker, Tina Fritsche, I paid the correct fees for this service. The filing was accepted by the Clerk on that same day.

8. "I checked the status of the Citations a few times and couldn't get any information. On June 29, 2015, I again checked status with the Civil Intake clerk, 'Iris.' I reiterated the entire scenario to Iris and asked for her help in getting these citations forwarded to the Secretary of State for service. She said they had not been issued and that the file was 'locked' by the manager, 'Ruth.' Iris verified that I had in fact paid the correct fee to achieve service through the Secretary of State. Ruth and the clerk who was supposed to work on this matter were both out of the office.

. . . .

10. "On July 8, 2015, I called the Civil Intake Clerk's office and spoke with 'Wanda Chambers.' She checked the status of the file and said that nothing had been done on this matter yet. After explaining the entire scenario, she offered to process the Civil Request forms at once and call me when she had done so. Fifteen minutes later, she called and said the Citations were on their way to the Secretary of State for service by Certified Mail.

11. "I checked the website on July 17, 2015, and saw activity concerning the service on the defendants. I called to verify that service had been achieved-- citations were served on July 15, 2015, and the Return

of Service filed with the Harris County Clerk's office on July 15, 2015. I printed copies of the proof of service for the file. I learned later, this was service upon the Secretary of State only--not on defendants.

12. "On July 20, 2015, I received two letters from the Secretary of State stating that the fees of $55 per citation for their service upon the defendants had not been paid. I called the Harris County Civil Process Clerk to ask what we had paid for online with the filing service that stated it was 'for service by certified mail?'

13. "I requested a firm check to cover the additional service fees and the Secretary of State served the defendants in late July, 2015, by certified mail. . . ."

Ms. Rae's account portrays some fault for all the delay on the Clerk's office, but it is clear that there was a substantial lack of due diligence on the part of counsel, who is ultimately responsible for insuring that his client's rights are timely, efficiently, and correctly processed. Effecting service of process is the most basic and routine of services performed by counsel and lack of diligent supervision over his firm's staff in performing them is inexcusable, especially in light of how much time had passed since Judith Deed's injury occurred and counsel's procrastination in even filing the initial petition. Given all the other instances of Plaintiffs' failure to perform with due diligence, and the fact that it would be so simple and easy to ask the Clerk when requesting service and paying, the Court rejects their arguments.

**Defendants' Response (#52) to #51**

Defendants state that many of the same policy considerations that apply under Rule 59(e) to final orders or judgments apply to motions for reconsideration of interlocutory orders under Rule 54(b). *eTool Development, Inc. v. National Semiconductor Corp.*,881 F. Supp. 2d 745, 748 (E.D. Tex. 2012).

Some of the considerations underlying Rules 59 and 60 inform the Court's review under Rule 54(b), including that motions to reconsider are not the proper vehicle for rehashing old arguments or raising arguments that could have been presented previously. *Barzelis*, 2013 WL 12126117, at *1. Rule 54(b) allows the court in its discretion "to reconsider and revise it prior orders without the timing restrictions and jurisdictional constraints that limit the court's authority to amend a judgment under Rules 59(e) of 60(b)," *Motion Games, LLC c. Nintendo Co., Ltd.*, 2014 WL 11619164m at *2 (E.D. Tex. Sept. 23, 2014), *citing eTool Development, Inc. v. National Semiconductor Corp.*,881 F. Supp. 2d 745, 748 (E.D. Tex. 2012); *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010). Defendants observe that Plaintiffs' arguments for reconsideration should be given only when a plaintiff establishes "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Plaintiffs have failed to establish any

of the three requirements. Plaintiffs failed to submit any controverting evidence to the Court to establish diligence in serving Defendants when they filed their response to Defendants' motion for summary judgment. Plaintiffs had significant opportunity to present Ms. Reece's affidavit before the Court issued its opinion. It cannot show personal knowledge of that period before she began working for Plaintiffs' counsel. Moreover the affidavit is filled with hearsay to which Defendants' object, states that she did not begin to work for Plaintiffs' counsel until June 11, 2015, more that two months after Plaintiffs re-requested service and eight months after the lawsuit was filed, and while it may reflect "a modicum of diligence for a twenty-eight day period between June 17, 2015 and July 15, 2015, it ignores the utter lack of diligence (other that filing a civil process request form on March 25, 2015).

The pleadings state that Plaintiffs did not exercise diligence for almost nine months after they filed their lawsuit. Furthermore they did not exercise due diligence from the issuance of citation on October 17, 2014 until they again requested service on March 25, 2015. Subsequently they failed to effect service of citation after the citations were ready on April 2, 2015 (#9-2 and 9-3).

In sum, "[a] motion to reconsider may not be used to relitigate old matters, or raise arguments or present evidence

that could have been raised before." *T-M Vacuum Products, Inc.
v. TAISC, Inc.*, No. H-07-4108, 2008 WL 2785636, at *2 (S.D. Tex.
July 16, 2008).

### Court's Decision

The Court agrees that Plaintiffs must have an expert witness
for the defective product claims. As the Texas Supreme Court
recently stated in *Gharda*, 464 S.W. 3d at 348,

> "Expert testimony is required when an issue involves
> matters beyond jurors' common understanding." *Mack
> Trucks, Inc. v. Tamez*, 206 S.W. 3d 572, 583 (Tex.
> 2006)(citation omitted). Proof other than expert
> testimony will support a jury finding only when the
> jurors' common understanding and experience will allow
> them to make that finding with reasonable probability.
> *Id.* We have consistently required expert testimony and
> objective proof to support a jury finding that a
> product defect caused the plaintiff's condition. *See,
> e.g., id.* at 582-83 . . . .

The Court does not have sufficient information to determine
whether there might be any fact issues that would prevent the
Court from determining as a matter of law that this case should
be dismissed for a failure to properly designate an appropriate
expert witness.

Nevertheless there is another, egregious problem here besides
the absence of expert witnesses: Plaintiffs' persistent and
unreasonable dilatoriness throughout this litigation that would
not have been practiced by an ordinarily prudent person under the
same or similar circumstances to toll the running of a statutes
of limitations and to preserve this suit from being time-barred.

Judith Deeds fell and injured herself on October 21, 2012, when the original petition's claims accrued. After waiting to file their petition until October 17, 2014, just four days before the two-year limitations' deadline, Plaintiffs' additional nine-month delay in procuring the issuance and service of process made [Plaintiffs] non-diligent as a matter of law. *Rigo*, 458 S.W. 2d 182. Thus the two-year statutes of limitations on the claims asserted in the original petition expired almost nine months before service on the Defendants was effected. Therefore nine-month gap between the filing and service of process warrants dismissal of those claims for lack of diligence as a matter of law. *See* pp. 10-13 of this Opinion and Order.

Plaintiffs may object that Magistrate Judge Stacy granted them leave to file an amended complaint on June 20, 2016 (#17 and 24), and that they filed their amended complaint as of that date (#25), before the Court granted Defendants' first motion for summary judgment on limitations. Therefore they might also argue that the warranty claims with their four-year statutes of limitations were already pending before the claims for negligence, negligent misrepresentation, and strict liability were dismissed and therefore still remain pending.

On June 20, 2016, approaching four years after Judith Deeds' fall and just four months before trial was scheduled, despite objections from Defendants, which included the statute of

limitations bar addressed in that first motion for summary
judgment, Judge Stacy granted their motion for leave to amend to
add the three new breach of warranty claims under Fed. Rule Civ.
P. 15(a), which states in relevant part,

> **(a) Amendments Before Trial.**
>
> > **(1) *Amending as a Matter of Course*.** A party may
> > amend its pleading as a matter of course within:
> >
> > > **(A)** 21 days after serving it, or
> > > **(B)** if the pleading is one to which a
> > > responsive pleading is required, 21
> > > days after service of a responsive pleading or 21
> > > days after service of a motion under Rule
> > > 12(b), (e), or (f) whichever is earlier.
> >
> > (2) *Other Amendments*. In all other cases, a party
> > may amend its pleading only with the opposing
> > party's written consent or the court's leave. The
> > court should freely give leave when justice so
> > requires.

A court has discretion in deciding whether to grant leave to
amend. *Foman v. Davis*, 371 U.S. 178, 181 (1962). Since the
language of Federal Rule of Civil Procedure 15(a) "'evinces a bias
in favor of granting leave to amend," the court must find a
"substantial reason" to deny such a request. *Ambulatory Infusion
Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, Civ. A. No. H-
05-4389, 2006 WL 2521411, *3 (S.D. Tex. Aug. 29, 2006), *quoting
Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004), and *Mayeaux
v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir.
2004). Nevertheless leave to amend "is not automatic." *Matagorda
Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704,

718 (S.D. Tex. 2000), *citing Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

While Rule 15(a) does not establish a time limit for filing a motion for leave to amend, "'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Smith v. EMC Corp.*, 393 F.3d at 595, *quoting Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992), *in turn quoting Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981). If there is substantial delay, the plaintiff bears the burden of demonstrating that it was due to oversight, inadvertence or excusable neglect. *Id.*, *citing Gregory*, 634 F.2d 203. Factors the court may consider in deciding whether to allow the amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *In re Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996).

Once a scheduling order is entered and the deadline for amending pleadings is past, as was the case here, Rule 16(b) governs rather than Rule 15(a). The scheduling order (#6) in this

case set a deadline of January 15, 2016 for amended pleadings;
Plaintiffs did not file their motion for leave to amend (#17)
until May 19, 2016. Thus Magistrate Judge Stacy should have
applied Rule 16(b) in deciding whether to grant Plaintiffs' motion
for leave to amend.

"Once a scheduling order deadline to amend a pleading has
expired, the party seeking leave to amend is effectively asking
the court for leave to amend both the scheduling order and the
pleading." *Escobar v. City of Houston*, Civ. A. No. 04-1945, 2007
WL 2003, at *1 (S.D. Tex. Feb. 11, 2007) In contrast to Rule 15's
"freely given" standard for amendment, Rule 16(b)(4) mandates that
"[a] schedule may be modified only for good cause and with the
judge's consent." Good cause requires a "party seeking relief
to show that the deadlines cannot reasonably be met despite the
diligence of the party needing the extension." *Southwestern Bell
Telephone Bell Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir.
2003). Plaintiffs not only failed to make such a showing, but did
not even try. The "good cause" standard concentrates on the
diligence of the party requesting the Court to modify the
schedule. *Mobius Risk Group, LLC v. Global Clean Energy Holdings*,
Civ. A. No. H-10-1708, 2011 WL 2193294, at *3 (S.D. Tex. June 6,
2011), *citing Parker v. Columbia Pictures Industries*, 204 F.3d
326, 340 (2d Cir. 2000)("[W]e agree with these courts that a
finding of 'good cause' depends on the diligence of the moving

party."), and *In re Milk Products Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999)   To decide if there is good cause, the court applies four factors:  (1) an explanation for plaintiff's failure to move timely for leave to amend; (2) the importance of the amendment; (3) possible prejudice in permitting the amendment; and (4) whether a continuance would  serve to cure the prejudice  *Id.*

The record reflects that Plaintiffs unduly delayed (1) in filing their complaint until four days before the statute of limitations expired, (2) in effecting service of process for almost another nine months, and (3) in filing their motion for leave to amend after the deadline for amending.  In fact, the timing strongly suggest they filed their motion for leave to amend only after Defendants' first motion for summary judgment alerted them to the limitations problem in their Original Petition due to their persistent dilatoriness and motivated them to attempt to circumvent it surreptitiously.  Therefore not only is Plaintiffs' explanation for its constant procrastination unreasonable, but the Court finds that Defendants would be prejudiced by allowing the amendment after they had presented a solid case of a limitations bar to their original complaint in their first motion for summary judgment. Plaintiffs' consistent and persistent delays in this litigation constitute anything but "good cause."  The Fifth Circuit has affirmed the denial of leave to amend when the movant has "engaged in undue delay." *Goldstein v. MCI Worldcom*, 340 F.3d

238, 254 (5th Cir. 2003), *citing Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992).

Moreover, in this litigation Plaintiffs have filed an Original Petition (#1, Ex. A), and Amended Complaint (#25), and a court-ordered Second Amended Complaint (#44), although while being challenged by motions for summary judgment, The Court finds that three bites of the apple constitute sufficient opportunity to plead a cause of action, and that Plaintiffs cannot cure their lack of diligence throughout this action.

Accordingly, for the reasons stated above, the Court

ORDERS that

(1) the Court reaffirms its grant of Defendants' first motion for summary judgment dismissing Plaintiffs' claims for strict liability, negligence, the related evidentiary rule of *res ipsa loquitur*, negligent misrepresentation, and *respondeat superior* on limitations grounds;

(2) the Court VACATES Magistrate Judge Stacy's order (#24) granting leave to Plaintiffs to file a first amended complaint and strikes that complaint for lack of diligence as a matter of law;

(3) the Court DENIES Plaintiffs' motion for reconsideration (#50); and

(4) the Court DENIES Plaintiffs' motion for oral hearing (#54). Accordingly this case is DISMISSED.

**SIGNED** at Houston, Texas, this  10th  day of  August , 2016.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE